### SALES THROUGH A JOINT ASSOCIATION.

Common Pleas Court of Hamilton County.

THE KROGER GROCERY & BAKING COMPANY v. THE BUTCHERS
HIDE ASSOCIATION.

Decided, April 13, 1909.

*Corporations—Knowledge as to By-laws of—Corporation Holding
Stock in Another Company Chargeable with Notice of—Construc-
tion of Contract Created by By-law—Acquiescence—Agency—Rights
and Liabilities of a Stockholder as a Stockholder and as One Un-
der Contractual Relations with the Corporation.*

1. A corporation is chargeable with knowledge of the by-laws of an-
other corporation of which it is a stockholder, and where one or
more of its officers is familiar with the business methods of such
company as carried on under the provisions of such by-law it is
chargeable with actual knowledge thereof.

2. The by-law involved in the case under consideration is probably
sufficient to create a contract between the company and its stock-
holders, but regardless of the legal effect of such a by-law acquies-
cence in its provisions is sufficient to create a contract.

3. The practical construction placed upon a contract by the parties
thereto will be adopted by a court, where there is any ambiguity and
the construction thus placed upon it is not manifestly contrary to
the terms of the agreement.

*Harry L. Gordon,* for plaintiff.
*John W. Peck,* contra.

HUNT, J.

This is an action to recover the sum of $1,500 alleged to be
due plaintiff by the defendant as an unpaid balance for certain
hides alleged to have been delivered by the plaintiff to the de-
fendant and sold by the defendant for plaintiff during the
months of January, February, March and part of April, 1905.

The pleadings and evidence establish the following facts:
The defendant corporation is a corporation organized for the
purpose of curing, selling and marketing the beef hides of its
customers. Section 8 of the constitution, regulations and by-

laws of the defendant company duly adopted, was and is as follows:

"The proceeds of the sales of hides, after deducting all the expenses of the association and such further sum as the board of directors may think proper to reserve for the payment of dividends on capital stock, shall be divided among the members who have delivered their hides to the association, in proportion to the number of pounds of hides contributed by each respectively. Such settlement or division shall be made semi-annually or oftener, as the board of directors, may, from time to time, determine.

"Any member of the association, who shall be desirous of receiving cash for his hides on delivery to the association, shall receive such price for his hides at the time of their delivery as may be fixed by the board of directors from time to time.

"Such member as shall take advantage of this provision, shall also be entitled to share in the dividends of his proceeds of the sales of hides as above provided—provided, if he has contributed all his hides to the association from the time of the next preceding division, but not otherwise.

"In making such division, the cash received from time to time, on delivery of hides, shall be deducted from the sum such member otherwise would have received."

It is further established that under said by-law the defendant company conducted its business by receiving hides from its various stockholders, giving each stockholder a book in which such hides would be receipted for, and at the end of each month the directors of the defendant company would meet and after taking into consideration the Chicago and local market prices of hides, would fix a fair market price for the hides received during the preceding month, which would be credited in the book of the stockholders delivering the hides, and for which a check would be delivered or mailed to such stockholders, and that at the end of each six months the profits of the company would be estimated and, after deducting an amount for dividends to all the stockholders, the balance would be divided among the stockholders who had delivered all their hides during such six months to the defendant company in proportion to the amount of hides furnished. The defendant after receiving the hides from its customers, would sort, scrape, cure and

prepare them for the market. The hides of the several stock-holders were not separately prepared and sold.

The firm of Shappel, Nagel & Yingling were butchers and had been stockholders of the defendant company, delivering all their hides to the defendant and receiving pay therefor as above described. They knew of the by-law above mentioned and of defendant's method of doing business thereunder. Some time prior to January 1, 1905, the Kroger Grocery & Baking Company bought out the business and assets of Shappel, Nagel & Yingling and thereby became a stockholder in the defendant company. Mr. Nagel became vice-president of the Kroger Company and Mr. Yingling the manager of the packing house and butchering department of such company. As such manager Mr. Yingling sent the hides of the plaintiff company to the defendant company during the months above mentioned. The plaintiff company was credited therefor and paid the prices fixed monthly by the directors of the defendant company, amounting to $8,279.47, but in April, Mr. Kroger, the president of the plaintiff company, ordered no further hides to be delivered to the defendant. At the end of six months he demanded what he claimed to be his company's proportion of the profits distributable under the by-law to all stockholders who had delivered all their hides, which demand was refused because the plaintiff company had not delivered all its hides to the defendant during such six months.

The evidence further shows that the stockholders who had delivered all their hides to the defendant during the six months ending July 1st, 1905, were awarded a dividend under the by-law of $1.20 per hundred pounds, and that plaintiff had delivered up to the time when he refused to make further deliveries, 107,465 pounds of hides. If the plaintiff had been included in the number of stockholders to whom this dividend was paid, such dividend would necessarily have been less than $1.20 per hundred, but the evidence does not disclose how much less.

Plaintiff claims that even if the by-law was valid, under a proper construction thereof the defendant was simply plaintiff's agent in the sale of its hides and that, after deducting certain charges, the amount thereof the plaintiff neither alleges or es-

tablishes by evidence, the plaintiff is entitled to the *pro rata* share ·of what the hides were sold for by the defendant, offering, however, no evidence as to what the hides wer sold for, except inferentially by the amount paid to plaintiff in connection with the $1.20 per hundred dividend. Plaintiff claims that the monthly amounts received by the plaintiff were simply payments on account.

The plaintiff as a stockholder in the defendant company is chargeable with knowledge ·of the by-law, and through Mr. Nagel and Mr. Yingling is charged with actual knowledge thereof, and of the defendant's method of doing business and of the defendant's method of fixing the amount paid to its shareholders for hides. It therefore had notice of the actual construction of such by-law by the defendant company. It made no objection thereto, and therefore knew that the hides delivered by it to the defendant were received by the defendant to be paid for under such by-law and method of doing business and no other.

· Where parties to a written agreement have by their own acts, placed a practical construction thereon, unless such construction is manifestly contrary to the terms of such agreement, it will be followed, especially where there is any ambiguity. Examining, however, the by-law as a whole and giving effect to all its parts, it seems that the monthly payments made by the order of the board of directors, where such board has acted in good faith, is as set forth specifically in the by-law the "price" of the hides, and that under the by-law the plaintiff has no further claim against the defendant, except as for dividends under the conditions of such by-law. The plaintiff arbitrarily refused to comply with such conditions.

Plaintiff further claims that such by-law is illegal as being unreasonable and involving a forfeiture of property or property rights.

There is nothing in the present case showing such by-law to be unreasonable. The defendant company has been doing business in this manner for many years with satisfaction to its stockholders, and the hypothetical cases referred to by the plaintiff seem to have never occurred. There is no claim or evidence of

any want of good faith in the fixing of this "price," or in anything done by the defendant or its officers.   The only way that plaintiff or any stockholder can be affected by the clause in question in such by-law is for such stockholder to deliver hides, but only part of his hides during any six months.   If any stockholder delivers any hides during any six months period, he must deliver all of his hides during such period, or, not forfeit, but never become entitled to what in the clause is called a dividend, but which in fact is a portion of the profits of the sale of all hides cured and sold by the defendant during such period.

The plaintiff as a stockholder is entitled to its general dividends as such, whether it delivers hides to the company or not, but its right to share in the profits from the sale of other hides cured and sold with its own is made dependent upon its delivery to the defendant company of all its hides during the period of six months.   Why should not the plaintiff be subject to the rule applicable to the performance of conditions precedent?

The plaintiff cites certain cases of forfeiture or confiscation of property and assessments of fines and penalties by corporations, private and municipal, under by-laws and ordinances in which it was held that the power so to do must be expressly given and when given, reasonably exercised, but such cases are admitted by the plaintiff to have little analogy to present case, except the case of *The Monroe Dairy Association* v. *Webb*, 40 N. Y. App. Div., 49, wherein each stockholder of the association was to deliver two hundred and one pounds of milk per day for each share of stock held, or pay the association one-eighth of a cent per pound for the difference.   In that case the court held that the by-law was void for want of power in the association and that the association could not recover the penalty.   In that case the stockholder had not subjected herself to the operation of the by-law, except by having become through the transfer of stock the owner of some shares thereof.   She had never delivered any milk to the company.   The penalty was sought to be enforced against her simply and solely as a stockholder.   Necessarily, if the by-law was void as *ultra vires*, it could not be enforced.   It does not follow that if she had delivered milk to the company to be sold under certain contract con-

ditions as to price and share in the general profits, she would not have been bound by such contract.

If the Kroger Grocery & Baking Company had not attempted to avail itself of the defendant's method of doing business, and if merely as a stockholder had been fined or assessed for not delivering hides, the case above mentioned would be applicable. Probably the by-law itself, of which the plaintiff is charged with notice as a stockholder, would be sufficient to create a contract as to any hides delivered, but in this case the plaintiff delivered the hides actually knowing of the by-law and of the conditions under which the defendant received and made settlements for such hides, and therefore understanding and acquiescing in the conditions under which his hides were received. This constitutes a contract to that effect, whatever might be the legal effect of the by-law as a mere by-law.

Plaintiff fails to recognize the distinction between its rights and liabilities as a mere stockholder and its rights and liabilities as a deliverer of hides under a contract. The former are limited by the rights of the corporation over its stockholders; the latter is a question of contract and by such contract the parties are bound, unless the contract is illegal.

Even if the contract was illegal, as being in restraint of trade, or against public policy, or for any other similar reason, the hides having been delivered under such contract the plaintiff will not be permitted to repudiate the contract and recover for what the hides were reasonably worth, or as upon an accounting for the proceeds of their sale by the defendant.

What the right of the plaintiff would be if the defendant refused to perform the contract as being illegal or *ultra vires* is not involved in this case as the defendant has set up no such claim.